Faty ANSOUMANA, Jacques Legrand Ngouvi, Lassana Diarra, Moussa Soumahoro, Mamadou Camara, Justin Obiang, Issa Diabate, Sidy Soukona, Dramane Zoungrana, Individually, and on behalf of all others similarly situated as Class Representatives, Plaintiffs,

v.

GRISTEDE'S OPERATING CORP.; Great Atlantic and Pacific Tea Company, Inc., d/b/a A & P; Shopwell, Inc., d/b/a Food Emporium; Duane Reade, Inc.; Charlie Baur, individually, and d/b/a B & B Delivery Service a/k/a Citi Express; Scott Weinstein and Steven Pilavin, individually and d/b/a Hudson Delivery Service, Inc.; Chelsea Trucking, Inc., a/k/a Hudson York, Defendants.

No. 00 Civ. 253(AKH).

United States District Court, S.D. New York.

March 11, 2003.

Parisis G. Filippatos, Outten & Golden, LLP, Laurence E. Norton, II, Palyn P. hung, National Employment Law Project, James Williams, National Employment Law Project, Inc., Adam T. Klein, Outten & Golden, New York City, for Plaintiffs.

Nicholas C. Katsoris, New York City, for Gristedes Operating Corp.

Daniel F. Murphy, Putney, Twombly, Hall & Hirson, New York City, for Duane Reade, Inc.

Perry S. Heidecker, Milman & Heidecker, Lake Success, NY, for Scott Weinstein.

Alan R. Friedman, Kramer, Levin, Naftalie & Frankel, Andrew J. Maloney, III, Defeis, O'Connell & Rose, New York City, for John Catismatidis.

### OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT

HELLERSTEIN, District Judge.

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, defendant Duane Reade moves for reconsideration of my

Order and Opinion dated January 28, 2003 ("Order"), granting plaintiffs partial summary judgment. Defendant argues that I impermissibly adopted plaintiffs' version of a disputed material fact and that I failed to apply controlling precedent on the issue of joint employment status. For the reasons set forth below, defendant's motion is denied.

■ On a motion for reconsideration, the moving party must demonstrate that the court failed to consider "controlling decisions or factual matters that were put before it on the underlying motion," and which, had they been considered, might reasonably have led to a different result. *Hoepker v. Kruger*, No. 00 Civ. 6619, 2001 WL 987937, at *1, 2001 U.S. Dist. LEXIS 13043, at *2 (S.D.N.Y. Aug. 28, 2001). Defendant argues that I failed to consider certain factual matters and a decision it believes is controlling.

Defendant Duane Reade objects to my finding that "delivery workers worked from the premises of Duane Reade stores, and assisted other workers in those stores with bagging items at check-out counters, stocking shelves, providing security, and making inter-store deliveries." It contends that this evidence is contested, and that of four delivery workers deposed in this case, two testified that they did not perform any duties other than making deliveries.

Although only four delivery workers from the whole class of workers were deposed, the four worked in a number of Duane Reade stores. Plaintiff Mamadou Dia worked at Duane Reade stores at 63rd Street and Second Avenue, 86th Street and Second Avenue, 74th Street and Third Avenue, and a store on 89th Street, and testified that at least at two of these stores, he was told to bring up heavy items for delivery, and helped pack those items. Plaintiff Cheick Camara worked at Duane Reade stores at 79th Street and Amster-

dam Avenue and 70th Street and Broadway, and testified that he was asked to help customers at the former. Plaintiff Moussa Soumahoro worked at Duane Reade stores at 58th Street and Third Avenue, 91st Street and Broadway, and 89th Street and Columbus. He testified that at both the 58th Street and the 91st Street stores, he was asked to perform other tasks besides delivering. Plaintiff Justin Obiang worked at Duane Reade stores at 79th Street and Amsterdam, 102nd Street and Amsterdam, and 69th Street and Broadway, and was told that the 69th Street store to perform a variety of tasks other than making deliveries. This testimony of the four plaintiffs shows that the Duane Reade managers could ask workers to perform various in-store tasks, and that many of the managers so instructed the delivery workers assigned to their stores.

It is not relevant if *all* the delivery workers, or only some, performed in-store tasks. The important issue is if the Duane Reade managers felt that they had the right to give direction to, and control and supervise, the delivery workers. Duane Reade *admits* in its papers that some workers were told to help with tasks in stores while some only made deliveries, without any distinguishing principle other than the decisions of the store supervisors as to which delivery workers should do what kinds of work. The plaintiffs' deposition testimony suggests that the performance of in-store tasks was normal and widespread. It is also significant that Duane Reade failed to present affidavits from any of its store managers to contradict this testimony. Thus, the credible evidence, and inferences fairly raised from that evidence, shows that Duane Reade considered and treated the delivery workers as employees who worked in its stores, not as outside delivery service personnel working for companies like FedEx or

UPS. I made my findings on uncontested evidence, not disputed evidence, and that evidence reveals a joint employment relationship between Duane Reade and Hudson/Chelsea.

Duane Reade also argues that I concluded unfairly that Duane Reade controlled the payment to the workers, and itself paid them less than the minimum wage. That was not my finding. My ruling was that Duane Reade, as a joint employer with Hudson/Chelsea, was responsible for ensuring that the delivery workers were paid the minimum wage. Duane Reade cannot plead its indifference to Chelsea/Hudson's payments as a legal excuse.

■ Duane Reade contends that the amount of its payments to Hudson/Chelsea was sufficient to enable Hudson/Chelsea to pay minimum wages, and that it was therefore Hudson/Chelsea, and not Duane Reade, that was responsible for underpayments to workers. The responsibility of joint employment, however, is that both Duane Reade and Hudson/Chelsea are required to assure that employees be paid statutorily mandated wages. The more responsible employer, or one who pretends to be such, cannot be excused if the other takes money for itself and diverts it from employees entitled to their due. Thus, Duane Reade would not have discharged its duty towards the delivery workers if it paid Hudson/Chelsea an amount sufficient to satisfy the minimum wage, assuming it did so at all. It had the obligation, as a joint employer, to make sure Hudson/Chelsea was in fact paying the employees whom they had in common the minimum wage.

Duane Reade argues that I failed to apply the four-factor test set forth in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984). This test, as I described in my Order, was elaborated to decide whether a prisoner who worked for a community college as part of a special program would be entitled to minimum wages from the community college. The test was used by the Second Circuit again in *Herman v. RSR Security Services*, 172 F.3d 132, 140 (2d Cir.1999), to analyze whether a shareholder and member of the board of a company who had the authority to hire managerial staff, occasionally supervised and controlled employee work schedules, and had the authority to sign payroll checks could be held liable as an employer under the FLSA. To argue that it is the "joint employment" test that controls in this Circuit, however, is misguided. Another adumbration of the "joint employment" test, fitting the facts of another joint employment situation, was elaborated by Judge Cote in *Lopez v. Silverman*, 14 F.Supp.2d 405 (S.D.N.Y.1998), and district courts in this Circuit have expressed differing opinions as to which expression of the formula should guide their analysis in joint employment situations. *Compare Zheng v. Liberty Apparel Co.*, No. 99 Civ. 9033, 2002 WL 398663, 2002 U.S. Dist. Lexis 4226 (S.D.N.Y. Mar. 13, 2002) (applying the *Carter* test), *with Liu v. Donna Karan Int'l*, No. 00 Civ. 4221, 2000 U.S. Dist. Lexis 18847 (S.D.N.Y. Dec. 22, 2000) (finding the *Lopez* test more appropriate in joint employment situation).

I am guided by the central, controlling question: What is the "economic reality" of an employment relationship? *Carter*, 735 F.2d at 12; *Goldberg v. Whitaker House Co-op.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). My examination of all of the pertinent cases in the joint employment situation, including the Supreme Court's decision in *Rutherford Food Corporation v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) and the decisions of other circuits, such as *Torres–Lopez v. May*, 111 F.3d 633 (9th Cir.1997), and *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir.1996), shows that the dominance, direction, and control by

Duane Reade of the delivery workers assigned to it by Hudson/Chelsea manifests a joint employment relationship. The delivery workers assigned to Duane Reade performed an integral service for Duane Reade, *see Rutherford*, 331 U.S. at 730, 67 S.Ct. 1473; *Torres–Lopez*, 111 F.3d at 642–44; *Lopez*, 14 F.Supp.2d at 420, did a specialty job, and worked as individuals, having little or no bargaining power to negotiate as a group until they were organized by Local 338 in March 2000, *see Rutherford*, 331 U.S. at 730, 67 S.Ct. 1473. The relationship between Duane Reade and the Hudson/Chelsea defendants approached exclusive agency, such that there was significant interrelation between the two employers. *See Lopez*, 14 F.Supp.2d at 421. And, more important, Duane Reade had the power, authority, and control to direct the delivery workers in their tasks, and often exercised this control. *See Carter*, 735 F.2d at 12 ("The power to control a worker clearly is a crucial factor in determining whether an employment relationship exists."). Indeed, the evidence shows that Duane Reade, although it left it to Hudson/Chelsea to directly hire and fire the delivery workers, had no hesitation in asking Hudson/Chelsea to remove a worker from a store, or to especially assign a specific worker; that Duane Reade negotiated aggressively with Hudson/Chelsea over the rates paid to Hudson/Chelsea per worker; and, most telling, that Duane Reade controlled employee work schedules and the conditions of employment by determining how many workers were needed in a store and deciding whether those workers' assignments would include in-store tasks, or inter-store deliveries, in addition to client deliveries. *See Carter*, 735 F.2d at 12 (enumerating four-factor "economic reality" test). The economic reality here, then, is that Duane Reade was a joint employer.

Finally, Duane Reade complains that I did not define what I meant by "assigned"

in my grant of partial summary judgment to those plaintiffs who were "hired by or worked for the Hudson/Chelsea defendants, were assigned to a Duane Reade store, and made deliveries mainly on foot." As is clear, "assigned" means that the Hudson/Chelsea defendants directed the workers to deliver for particular Duane Reade stores.

Once a delivery worker was so assigned, he was under the direction and control of Duane Reade supervisors, managers, and cashiers, who decided whether the worker would only make deliveries, or also stock shelves and help customers. Such circumstances manifest a joint employment relationship. Duane Reade's motion for reconsideration is denied.

SO ORDERED.